# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2024

Lyle W. Cayce
Clerk

————————————

No. 23-50866

————————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Elauterio Aguilar-Torres,

*Defendant—Appellant*.

————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:23-CR-272-1

————————————————————————

Before Jones, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:

Elauterio Aguilar-Torres appeals his conviction and sentence for illegal reentry after removal. He argues that 8 U.S.C. § 1326(b) is unconstitutional because it allows a sentence above the otherwise applicable statutory maximum established by § 1326(a) based on facts that are neither alleged in the indictment nor found by a jury beyond a reasonable doubt.

Aguilar-Torres has filed an unopposed motion for summary disposition and a letter brief correctly conceding that the only issue he raises is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). *See*

No. 23-50866

*United States v. Pervis*, 937 F.3d 546, 553–54 (5th Cir. 2019). He explains that he has raised the issue to preserve it for possible further review. However, unlike our usual cases[1] concerning preserved challenges to *Almendarez-Torres*, the defendant-appellant, rather than the Government, has moved to summarily dispose of his own case. Where the parties "affirmatively desire the same result"—here, both the Government and Aguilar-Torres agree affirming the district court is the appropriate outcome—there is no case or controversy for our court to adjudicate. *Bullard v. Estelle*, 708 F.2d 1020, 1023 (5th Cir. 1983) (citation omitted). This unusual procedural posture, wherein the appellant affirmatively acts to procure a result which defeats his interest, fully consistent with his opponent's position, leaves nothing for this Court to decide. Given the lack of adversity between the parties, and where the defendant-appellant has moved for summary affirmance against his own

---

[1] When controlling jurisprudence forecloses the defendant's argument, the defendant usually embarks on an appellate journey that preserves the argument *and* adversity. The defendant notices an appeal and offers his argument for reversal while acknowledging existing precedent. This quest for reversal forces his opponent—the Government—to respond. In so doing, the defendant engages in the battle Article III requires. Issue is joined.

The Government frequently responds with a motion for summary affirmance. And where the defendant-appellant concedes that the argument is presently foreclosed under controlling jurisprudence, he declines, as he must, to oppose. But because this saga preserves the requisite continuing controversy between two adverse parties, we have frequently granted the Government's responsive, unopposed motions for summary affirmance. *See, e.g.*, *United States v. Zeno*, No. 22-30112, 2023 WL 2423158, at *1 (5th Cir. Mar. 9, 2023); *United States v. Salazar*, No. 21-50547, 2022 WL 118421, at *1 (5th Cir. Jan. 11, 2022).

Here, the defendant-appellant sought an impermissible shortcut. He appealed and donned the posture of his opponent, asking this court for summary affirmance of his own conviction. In procedurally joining forces with the Government, he (undoubtedly inadvertently) destroyed adversity, and with it, our jurisdiction. Article III does not permit us to grant a fast pass to the Supreme Court where true adversity no longer exists.

No. 23-50866

interest, we must dismiss for lack of jurisdiction. *See Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023).

Accordingly, Aguilar-Torres's motion for summary affirmance is moot, and his appeal is DISMISSED.

No. 23-50866

Don R. Willett, *Circuit Judge*, dissenting:

Without soliciting input from the parties on the issue, the majority stakes out a position contrary to our many opinions (albeit unpublished and thus nonprecedential) and dismisses this case for lack of jurisdiction.[1] The reason, it says, is that the defendant (as opposed to the Government) has moved for summary affirmance of the district court's judgment. Both parties "affirmatively seek the same result," the majority explains, and therefore "the lack of adversity" means that there is no Article III case or controversy before us.[2]

This reasoning has some intuitive appeal, but it is unclear to me, at least without further briefing, that it is correct. We have previously resolved cases, and thus saw no apparent "lack of adversity," when the parties disagreed on the merits of the underlying claims but nonetheless agreed that the district court erred and should be reversed.[3] If no justiciability issue arises in that context, I am doubtful it arises in the mirror-image case, in which the parties disagree on the merits but agree that the district court should be affirmed.[4] It is thus distinctly possible, in my view, that the majority's

---

[1] *See, e.g.*, *United States v. Lopez-Cristobal*, No. 22-50985, 2023 WL 2808459, at *1 (5th Cir. Apr. 6, 2023); *United States v. Rosales-Sanchez*, No. 21-50598, 2021 WL 7210419, at *1 (5th Cir. Dec. 8, 2021); *United States v. Jimenez-Maria*, 2024 WL 2151709, at *1 (5th Cir. May 14, 2024).

[2] *Ante*, at 2.

[3] *See, e.g.*, *Greinstein v. Granite Serv. Int'l*, 2024 WL 3771455, at **1–2 (5th Cir. Aug. 13, 2024) (resolving a case in which the "district court accepted neither party's argument" and "[b]oth parties agree[d] that [one of our recent decisions] resolves the key question" on appeal and that the district court should be reversed); *United States v. Kelly*, 40 F.4th 250, 253 (5th Cir. 2022) (noting that "both parties agree" that the district court erred and declining the Government's invitation to affirm on different grounds).

[4] That the parties here disagree on the *merits* is a plausible distinction between this case and *Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023) (noting that the parties "agree[d] on a constitutional question").

dismissal is premised on a reductive conception of Article III adversity and hinges on immaterial distinctions.

Indeed, I fail to see a meaningful difference between (1) conceding that an argument is foreclosed by controlling precedent, and (2) acquiescing in the *only* judgment that we can provide based on that concession. A party who has conceded that his argument cannot win is a party who has already accepted the fate of an adverse legal judgment. And if a party has already accepted that inevitability, it is a small, if not inconsequential, step for that party to move for that judgment himself. More concretely, I fail to see the difference between a defendant such as Aguilar-Torres moving for summary affirmance on the one hand and the Government moving for summary affirmance *unopposed* on the other. In either case, both parties accept the same judgment. No adversity detected.

In a lengthy footnote, the majority acknowledges that we have not previously dismissed cases for lack of jurisdiction when the Government moves for summary affirmance unopposed,[5] even though those cases could just as equally be described to "lack the adversity" necessary for Article III adjudication. What separates those cases from this case, the majority explains, is that the defendants in those cases at least "offer[] [their] argument for reversal while acknowledging existing precedent," thus engaging in the "battle Article III requires."[6] In other words, if a party offers a token, pro forma argument while contemporaneously waving the white flag of defeat, a "battle" purportedly ensues and our jurisdiction is restored. I am

---

[5] *Ante*, at 2 n.1.

[6] *Ibid.*

skeptical. "The Constitution deals with substance, not shadows,"[7] and any "battle" of the majority's definition is one that is at war with itself.

As I see it, the real Article III problem in this case is not party adversity, but judicial hierarchy. Aguilar-Torres forthrightly concedes, as he must, that his argument is foreclosed by the Supreme Court's decision in *Almendarez-Torres v. United States*.[8] And as an intermediate court of appeals, we are of course powerless to overrule it.[9] In the larger context, then, the parties have a genuine dispute; they just agree that we are the wrong court to decide it. An argument to us that Supreme Court precedent should be overruled is therefore not only futile but misdirected.

That reality, to my mind, hardly has jurisdictional significance. Parties who appeal to us will often concede that their argument is foreclosed by either circuit or Supreme Court precedent. And when those arguments are presented to a three-judge panel, as the one is here, we simply acknowledge the argument and reject it as a matter of stare decisis. We do not dismiss it for lack of jurisdiction.[10] It is difficult to imagine that no Article III case or controversy exists for the entire lifespan of a lawsuit *until* it reaches our en banc court or the Supreme Court. Subject-matter jurisdiction must exist

---

[7] *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 230 (2023) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325 (1867)).

[8] 523 U.S. 224 (1998).

[9] *See* BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT 27 (2016) ("Federal and state courts are absolutely bound by vertical precedent—those delivered by higher courts within the same jurisdiction."); *see also Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts[.]").

[10] *See, e.g.*, *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, n.23 (5th Cir. 2024) (noting that the plaintiffs acknowledge that their argument is foreclosed by circuit precedent and rejected it as a matter of stare decisis).

"[a]t all stages of litigation,"[11] and I cannot help but think that the majority's holding casts that elemental proposition into doubt.

This is all to say that while I am far from certain that the majority's disposition is correct, I am also not solidly cemented into the contrary view. At bottom, I am afraid that the issue is more complicated than we probably appreciate. There are other instances in which parties agree on the ultimate outcome of a dispute but over which we and the Supreme Court nevertheless recognize jurisdiction. The leading casebook on our jurisdiction notes a few examples, such as consent decrees and appeals in which the Solicitor General confesses error in the judgment below.[12] It is not clear to me, at least at this juncture, whether the parties' agreement in this case is of similar kind. But I would think that uncertainty would warrant, at a minimum, asking the parties what they think, lest we force an error of our own making. Query, too, whether there is a "lack of adversity"—and thus no justiciable dispute—when no party briefs or contests the issue on which the majority now disposes of this appeal.[13] Sua sponte decisionmaking by definition has no adversity.

\* \* \*

At the same time, I recognize that it is entirely possible that, even if I am right about all the foregoing, the court's dismissal for lack of jurisdiction today may have no discernible effect on what Aguilar-Torres really seeks: Supreme Court review. Whether we dismiss for lack of jurisdiction or affirm as a matter of stare decisis could be, in reality, of no practical consequence for the parties or the Supreme Court. Either way, Aguilar-Torres can file his

---

[11] *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

[12] *See* Richard H. Fallon, et al., Hart & Wechsler's The Federal Courts and the Federal System 99 (7th ed. 2015).

[13] *Cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation.").

petition for certiorari, and the Supreme Court can grant it—or not. Nevertheless, I worry that an uninformed, and potentially incorrect, *sua sponte* assessment of our jurisdiction can have ripple effects far beyond this routine case. Federal courts have played fast and loose with the word "jurisdiction" before, and our jurisprudence has not improved because of it.[14] I simply hope that this case will not be counted among the many others that have applied "the term 'jurisdiction' in a 'profligate' manner."[15]

---

[14] *See, e.g., Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 90 (1998) ("'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.'" (quoting *United States v. Vannes*, 85 F.3d 661, 663 n.2 (C.A.D.C. 1996)); *Abraham Watkins Nichols Aziz & Stogner v. Festeryga*, ___ F.4th ___, ___, 2024 WL 3533052, at * (5th Cir. July 25, 2024) (reluctantly following a prior panel decision that called the waiver doctrine "jurisdictional," despite the many "erroneous premises" that holding rested on).

[15] *Harrow v. Dep't of Def.*, 601 U.S. 480, 489 n.1 (2024) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006)).